UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MALENA JIMENEZ, an individual,

    Plaintiff,

 v.

HEMATERRA TECHNOLOGIES, LLC, a Florida limited liability company, and CHAMPION MEDICAL TECHNOLOGIES, INC., an Illinois corporation, collectively doing business as INVITA HEALTHCARE TECHNOLOGIES, INC., an assumed business name,

    Defendants.

Case No. 4:22-cv-00467-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is defendants' motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and under the doctrine of forum non conveniens. Dkt. 5. For the reasons explained below, the Court will partially grant and partially deny the motion.

## BACKGROUND

The case arises from two employment contracts. Plaintiff Malena Jimenez brings breach of contract and tort claims against her former employer, Defendants

**MEMORANDUM DECISION AND ORDER - 1**

HemaTerra Technologies and Champion Medical Technologies. She alleges they failed to make a contractually required severance payment and tortiously interfered with her subsequent employment opportunities.

Jimenez is an American Board of Criminalists Molecular Biology Fellow with experience that includes laboratory information management, laboratory safety, laboratory auditing, CODIS, and DNA casework. In May 2014, Jimenez joined STaCS, a British Columbia corporation, as a Field Application Specialist, working on a remote independent contractor basis. Jimenez was living and working in Missouri when she contracted with STaCS and moved to Idaho several months later.

Jimenez worked for STaCS under the Field Application Specialist Contract ("FAS Contract," Exhibit A, Dkt. 12-1). The FAS Contract states that the agreement will be "governed and construed according to the laws in force in the Province of Ontario, [Canada]" and "in the case of disagreement . . . the matter shall be referred to arbitration in Ontario." Dkt. 12-1 at 19.

In May 2021, Champion Medical Technologies, an Illinois corporation, doing business as InVita HealthCare Technologies acquired an interest in STaCS. Through that acquisition, InVita became STaCS' successor in interest in the FAS Contract with Jimenez. After that acquisition, Jimenez continued to work for

InVita as a Field Application Specialist, on an independent contractor basis, for several months.

In December 2021, InVita ended the FAS Contract and offered to hire Jimenez as an employee (as opposed to independent contractor). Jimenez asserts that InVita terminated the FAS Contract without cause. *Compl.* ¶ 14, Dkt. 4-1. The FAS Contract states if STaCs terminates the agreement without cause, STaCS will provide Jimenez with a severance of $6,570, plus one week of her base pay for each additional year of service after her first year. Based on that provision, Jimenez asserts that InVita owes her approximately $20,700. *Compl.* ¶ 16, Dkt. 4-1. InVita maintains that it does not owe Jimenez severance for the FAS Contract termination because InVita offered, and Jimenez accepted, full-time employment on January 1, 2022, immediately after the FAS Contract ended. *Def.'s Mot.* at 3, Dkt. 5-1; *Compl.* ¶ 18, Dkt. 4-1.

When she accepted InVita's employment offer, Jimenez signed InVita's Invention Acknowledgement, Waiver, and Assignment Agreement ("Restrictive Agreement," Exhibit B, Dkt. 12-1). The Restrictive Agreement includes two provisions relevant to this dispute. First, the Restrictive Agreement includes a Restrictive Covenant at clause 8 that provides:

> I agree that during my Term of Service and for the twelve (12) month period after my Term of Service ends, I will not, directly,

or indirectly, on my own behalf or on behalf of another, market, service, sell to, contact, induce, encourage, or solicit any InVita Client, or attempt to do any of the foregoing for any purpose including, without limitation, for the purpose of becoming employed by a Client.

Dkt. 12-1 at 23. Second, the Restrictive Agreement includes a Forum Selection Clause at clause 11 that reads:

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and the courts situated in Jacksonville, Florida shall have exclusive jurisdiction.

*Id.*

Jimenez worked for InVita as an employee from her home in Malad City, Idaho from January 1, 2022 to about June 15, 2022. After ending her employment with InVita, Jimenez "secured an opportunity" to work as an independent contractor providing DNA validation services for Guerrieri Forensic Services, LLC. *Compl.* ¶ 26, Dkt. 4-1. Guerrieri Forensics is a single member Virginia LLC, owned by Richard Guerrieri, who is a forensic science expert and a member of the InVita Board of Directors.

In her complaint, Jimenez alleges that Guerrieri notified InVita's President, Todd Collins, that Guerrieri Forensics intended to engage Jimenez's services. Collins then contacted Jimenez asking her to reconsider her decision to leave InVita. Jimenez explained that would consider returning as an independent

contractor, rather than an employee, but the parties did not reach an agreement. Jimenez alleges that after she decided not to return as an employee, Collins raised an objection to her relationship with Guerrieri and expressed an intention to invoke the restrictive covenant. After that, Guerrieri Forensics withdrew its independent contractor offer to Jimenez, explaining that accepting the offer could constitute a breach of the restrictive covenant.

Jimenez asks the Court for relief on four counts. In Count One, Jimenez asks the Court to grant her declaratory relief from the Restrictive Agreement's forum selection clause and Restrictive Covenant. In Count Two, Jimenez asserts breach of contract for InVita's failure to make the severance payment required by the FAS contract. In Count Three, Jimenez asserts that InVita tortiously interfered with a contract when InVita caused Guerrieri Forensics to withdraw its offer to Jimenez. In Count Four, Jimenez alleges a claim for intentional interference with prospective economic advantage based on Collins's threat to invoke the restrictive covenant. InVita now moves to dismiss the entire case under the doctrine of forum non conveniens and count four under rule 12(b)(6).

## LEGAL STANDARD

The doctrine of forum non conveniens is "the appropriate way to enforce a forum selection clause pointing to a state or foreign forum." *Atlantic Marine*

*Construction Co. Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). The Court's analysis changes depending on the validity of the forum selection clause at issue.

Forum selection clauses are generally enforceable. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). However, a forum selection clause is not enforceable when (1) "the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] for all practical purposes be deprived of his day in court.'" *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019) (quoting *Bremen*, 407 U.S. at 18).

If the forum selection clause *is not* enforceable, then courts apply the traditional forum non conveniens analysis. This analysis asks two questions: "(1) whether an adequate alternate forum exists, and (2) whether the balance of private and public interest factors favor dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 257 (1981)).

Conversely, if the forum selection clause *is* enforceable, then courts apply a

modified forum non conveniens analysis. *Gemini Techs.,* 931 F.3d. at 914. In cases involving an enforceable forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties," as evidenced by analyzing the adjusted factors, "clearly disfavor a transfer." *Id*. at 914 (quoting *Atlantic Marine*, 571 U.S. at 52).

## ANALYSIS

Three of Jimenez' four claims against InVita—counts one, three, and four— stem from the terms of the Restrictive Agreement. Therefore, the Court will begin by analyzing the Restrictive Agreement, and then address the FAS Contract.

### A.    The Restrictive Agreement

#### 1.  The Restrictive Agreement's forum selection clause is not enforceable.

A forum selection clause is unenforceable if "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."[1] *Id.* at 916. That guidance is particularly significant in

---

[1] Importantly, applying this public policy *Bremen* factor does not include a choice of law analysis. In both *Gemini Technologies* and *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018), the Ninth Circuit applied the "public policy of the forum in which suit is brought"—not the forum instructed by the forum selection clause. In *Gemini Tech.*, the forum selection clause stated that any proceeding must be brought in Delaware, but the plaintiff filed a breach of contract claim in Idaho federal court under diversity jurisdiction. *Gemini Tech.*, 931 F.3d at 913. On appeal, the Ninth Circuit applied Idaho law—not Delaware law—when it found (Continued)

this case because Idaho Code § 29-110(1) generally strikes down forum selection

clauses that mandate a foreign forum:

> Every stipulation or condition in a contract, which by any party
> thereto is restricted from enforcing his rights under the contract
> in Idaho tribunals, or which limits the time within which he may
> thus enforce his rights, is void as it is against the public policy of
> Idaho. Nothing in this section shall affect contract provisions
> relating to arbitration so long as the contract does not require
> arbitration to be conducted outside the state of Idaho.

Idaho Code § 29-110(1) (2003). In *Gemini Tech*, the Ninth Circuit held that "the

plain language of Idaho Code § 29-110(1) declares a strong 'public policy' of

Idaho. This clear statutory declaration suffices under *Bremen*'s public policy

factor, which requires that the policy be declared 'by statute *or* by judicial

decision.'" *Gemini Tech.*, 931 F.3d at 916. Consequently, the Ninth Circuit held,

an otherwise enforceable forum selection clause is invalidated when the case is

brought in Idaho.

 Here, the Ninth's Circuit holding in *Gemini Tech* clearly shows that the

───────────────────

that Idaho Code § 29-110(1) satisfied the second *Bremen* factor and rendered the forum selection clause unenforceable. *Gemini Tech.*, 931 F.3d at 916.

 Similarly in *Advanced China Healthcare*, the Ninth Circuit again applied the law of the state where the suit was brought. In that case, the forum selection clause required disputes to be adjudicated in California courts, but the plaintiff filed in Washington district court. *Advanced China Healthcare*, 901 F.3d at 1085. The Ninth Circuit applied Washington law—not California law—and found that Washington law did not satisfy the *Bremen* public policy factor. *Advanced China Healthcare*, 901 F.3d at 1090.

Restrictive Agreement's Florida forum selection clause is not valid. As a result, InVita's motion for to dismiss related to the three claims stemming from the Restrictive Agreement must be analyzed under the traditional forum non conveniens factors. The Court will look to whether an adequate alternate forum exists, and whether the balance of private and public interest factors favor dismissal.

### 2.  Florida is an adequate alternative forum.

An adequate alternative forum exists if "the defendant is amenable to service of process in the foreign forum" and the foreign forum provides "the plaintiff with some remedy for his wrong." *Lueck*, 236 F.3d at 1143 (citations omitted). A defendant who "indicates" they are amenable to process in the foreign forum satisfies the first prong of this analysis. *Id*. The second prong is also a low bar: "[i]t is only in rare circumstances where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Id.* (citing *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)) (quoting *Piper Aircraft*, 454 U.S. at 254).

Here, InVita has stated that it is amenable to process in Florida. In addition, Florida courts are certainly capable of providing some remedy for the declaratory relief and tort claims that Jimenez seeks in claims one, three, and four. Therefore,

Florida is an adequate alternative forum for Jimenez to bring her claims regarding the Restrictive Agreement.

> **3. The traditional forum non conveniens private and public interest factors weigh against dismissing the claims arising under the Restrictive Agreement.**

Because an adequate alternative forum exists, the Court turns to the traditional private and public interest factors. Here, the bar for dismissal is relatively high. The "plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors *strongly* favor trial in a foreign [forum]." *Lueck*, 236 F.3d at 1142 (emphasis added). Moreover, "a plaintiff's choice of forum is entitled to greater deference when he has chosen the home forum." *Id*. at 1143.

> *a. The private interest favors are either neutral or weigh against dismissal.*

In *Lueck,* the Ninth Circuit identified six private interest factors which should be weighed in determining whether the plaintiff's choice of forum should be honored.  The first (the residence of the parties and the witnesses), second (the forum's convenience to the litigants), and fifth (the cost of bringing witnesses to trial) rely on the same analysis.

InVita argues that these factors weigh in its favor of dismissal because Jimenez is the only person involved who lives in Idaho, whereas InVita's

executives and employees live in Florida. The Court is not persuaded. The Ninth

Circuit has held that "a court's focus should not rest on the number of witnesses or

quantity of evidence in each locale. Rather, a court should evaluate 'the materiality

and importance of the anticipated [evidence] and witnesses' testimony and then

determine their accessibility and convenience to the forum." *Id*. at 1149 (citing

*Gates Learjet Corp. v. Jensen* 743 F.2d 1325, 1335–36 (9th Cir. 1984)). InVita cites

*Copitas v. Fishing Vessel Alexandros* for the proposition that the private interest

factors weighted towards dismissal because "most of the key players and

information for trial are closer to" the alternative forum. 20 Fed. Appx. 744, 745

(9th Cir. 2001). But in that case, the Ninth Circuit also concluded that "[p]laintiff's

choice of forum . . . is entitled to diminished deference . . . because Plaintiffs are

not residents of" their chosen forum. *Id.* at 747. Here, Jimenez is an Idaho resident

bringing the claim in her home forum, so her choice is entitled to significant

deference.

　　　Even if more of InVita's witnesses live in or near Florida, InVita has not

demonstrated it bears a greater burden. True, InVita—a business with two

subsidiaries, with principal place of business or operations in two American states

(Florida and Illinois) and two Canadian provinces (Ontario and British

Columbia)—will need to fly its witnesses to Idaho. But if the Court grants the

motion to dismiss, Jimenez—a private individual—would need to fly herself and at least one attorney to Florida. InVita simply has not shown its burden is greater. But even without that consideration, these factors lean against dismissal because Jimenez filed suit in her home forum.

The third private interest factor considers access to physical evidence and other sources of proof. InVita did not refute Jimenez' assertion that the physical evidence in this case appears to be a relatively small number of documents which are easily shared electronically. This is a stark contrast to, for instance, the physical evidence of airplane crashes at issue in *Piper Aircraft*. There, a case brought in California was dismissed because a "large proportion of the relevant evident [from a plane crash in Scotland] is located in Great Britain." *Piper Aircraft*, 454 U.S. at 254. Here, in contrast, there is no real issue of physical evidence, so this third factor is neutral.

The fourth private interest factor—whether unwilling witnesses could be compelled to testify—also has little impact. Guerrieri is the only non-party witness the parties identify. On the one hand, because Guerrieri lives in Virginia—which is over 100 miles from Florida and Idaho—he could not be compelled to testify in either forum. Fed. R. Civ. P. 45(c)(10)(A). On the other hand, a witness can be compelled to appear within 100 miles of where they "regularly transact business in

person." Fed. R. Civ. P. 45(c)(10)(A). Because Guerieri is on the InVita Board, it is possible that he regularly transacts business in Florida within 100 miles of Jacksonville and could thus be compelled to testify in that forum. Ultimately, InVita failed to allege or support facts that would lead to that conclusion, making this factor neutral.

The sixth private interest factor considers the enforceability of the judgment. This factor is neutral because a Florida court would be as able to enforce a judgement as an Idaho court. Similarly, neither the Court nor the parties can identify any "other practical problems that make trial of the case easy, expeditious, and inexpensive" that would favor dismissal under the seventh and final factor. *Lueck*, 236 F.3d at 1142.

Most of the private interest factors are neutral, one or two leaning against dismissal, and Jimenez' choice of her home forum must be given significant deference. Viewed in total, the private interest factors counsel against dismissal.

> b.  *The public interest favors weigh against dismissal.*

The public interest factors in a traditional forum non conveniens are: (1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1142 (citing *Piper*

*Aircraft*, 454 U.S. at 259–61).

On the first public interest factor, the Court agrees with Jimenez that the local interest in the lawsuit is significant. Idaho Code § 29-110(1) makes that clear. Moreover, the Court disagrees with InVita that Jimenez' status as a remote worker living in Idaho necessarily reduces the local interest of her claims filed in Idaho. The prevalence of remote work has dramatically increased over the last few years, and as more employees—and employers—benefit from that arrangement, the local interest of Idaho in claims that Idaho residents make against out-of-state employers will likely increase, not decrease. The first factor weighs against dismissing the claim.

The second public interest factor, the court's familiarity with the governing law, also weighs against dismissal. "Before dismissing a case for forum non conveniens, a district court must first make a choice of law determination." *Lueck*, 236 F.3d at 1148. But the governing law is not determinative to the forum non conveniens analysis unless it involves a federal statute requiring venue in the United States. *Lueck*, 236 F.3d at 1148. No such federal statute applies in this case, so the Court need not conclusively determine the governing law for the forum non conveniens purposes. *Lueck*, 236 F.3d at 1148.

However, if the case were to remain in Idaho's federal district court, the

Court would need to determine the governing law to resolve the claim for declaratory relief and the two tort claims. "In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *SpeedConnect LLC v. Idaho Falls Wireless Partnership*, 960 F.Supp.2d 1114 (D. Idaho, 2013) (citing *Abrogados v. At & T, Inc.*, 223 F3d 932, 934 (9th Cir. 2000)). Idaho analyzes conflict-of-law issues under the most significant relationship test. *Id.* at 1127 (citing *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651 (Idaho 1995)). But regardless of whether Idaho or Florida law governs, "the Court is more than capable of adjudicating [declaratory judgment and tortious interference with contract claim] disputes under either state's common law." *Id.* at 1128. Therefore, the third public interest factor weighs against dismissing the claims arising from the Restrictive Agreement.

The third and fourth public interest factors also weigh against dismissing the claim. There is no evidence that the adjudicating this run of the mill contract dispute in Idaho district court would be more of a burden or cause more congestion on the courts than if the case were dismissed and refiled in Florida. The fifth public interest factor also weighs against dismissal because, as previously discussed, the dispute is not unrelated to this forum. Viewed together, the public interest factors weigh against dismissal.

In sum, all the private and public interest factors related to Jimenez claims under the Restrictive Agreement are either neutral or weigh against dismissal. Because the private and public interest factors do not "strongly favor trial in the foreign [forum]," the "plaintiff's choice of forum will not be disturbed." *Dole Foods*, 303 F.3d at 118 (citing *Gates v. Learjet*, 743 F.2d 1325, 1334–35 (1984)). Therefore, InVita's motion to dismiss Jimenez' declaratory and tort claims relating to the Restrictive Agreement based on forum non conveniens is denied.

### 4. Jimenez's claim for intentional interference with a prospective economic advantage is not sufficiently pled.

Because the Court is not dismissing claim four on the basis of forum non conveniens, it will consider defendants' alternative argument that the claim should be dismissed under Rule 12(b)(6). A 12(b)(6) motion challenges the legal sufficiency of the claim stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a

defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 557 (quotation omitted).

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted). "Dismissal of a complaint without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).

Here, count four alleges a claim for intentional interference with a prospective economic advantage. Under Idaho law, that type of claim has five elements: (1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted. *Bank of Commerce v. Jefferson Enters., Ltd.*

*Liab. Co.*, 154 Idaho 824, 832 (2013); *see also Cantwell v. City of Boise*, 146 Idaho 127, 137-38 (2008). As to the fourth element, "[w]rongful means include conduct in violation of: (1) a statute or other regulation; (2) a recognized rule of common law, such as violence, threats of intimidation, deceit, misrepresentation, bribery, or disparaging falsehood, or (3) an established standard of trade or profession." *Grimmer v. Costco Wholesale Corp.*, No. 2:13-cv-00075-REB, 2013 U.S. Dist. LEXIS 140183, at *17-18 (D. Idaho Sep. 27, 2013).

Jimenez fails to sufficiently plead the fourth element, wrongfulness. The allegedly wrongful conduct is Collins objecting to the "proposed relationship with Guerrieri Forensics and express[ing] an intention to invoke the Restrictive Covenant as a bar to the relationship." Dkt. 12-1 at 34. But efforts to enforce a contract clause—regardless of the clause's enforceability or conscionability—does not meet the standard of wrongfulness. Enforcing a contract is a normal part of business relations and does not violate a statute, regulation, recognized rule of common law, or established professional standard.

Jimenez argues in her brief that the conduct was wrongful because Collins' decision to invoke the contract was made "in bad faith and in apparent retaliation." Dkt. 7 at 17. Those facts may meet the standard of wrongfulness, but they are not plead in the complaint. Therefore, the defendants' motion to dismiss is granted.

However, the Court cannot conclude that amendment would be futile, so the claim will be dismissed with leave to amend.

### B.   The FAS Contract.

The Court turns now to the FAS Contract. The first question is whether the forum selection clause requiring arbitration in Ontario, Canada governed by Ontario law is enforceable. An arbitration provision directing that arbitration occur at a particular site can be construed as a forum selection clause. *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 837 (9th Cir.2010) ("The requirement of arbitration at the defendant's site is effectively a forum selection clause, in which the parties agreed to arbitrate at the location of a defendant's principal place of business.").

As explained previously, a forum selection clause is generally enforceable, unless it violates one of the three *Bremen* factors. *Bremen*, 407 U.S. at 15; *see also* 9 U.S.C. § 2 (Federal Arbitration Act stating that arbitration agreements are generally valid). Here, there is no evidence or argument that the first or third *Bremen* factors are met. However, as discussed, the Ninth Circuit has held that Idaho Code § 29-110(1) satisfies the second *Bremen* factor. *Gemini Tech.*, 931 F.3d at 916. That conclusion is not affected by the exception in the Idaho statute for arbitration provisions.

Idaho Code § 29-110(1) provides that "nothing in this section shall affect contract provisions relating to arbitration so long as the contract does not require arbitration to be conduct outside the state of Idaho." The Idaho Supreme Court has held that this means forum selection clauses requiring arbitration are valid as to the arbitration requirement, but are not valid as to any requirement that the arbitration occur outside of Idaho. *See Off-Spec Solutions, LLC v. Transportation Investors, LLC*, 168 Idaho 734 (Idaho 2021) (upholding an arbitration agreement with a Florida forum selection clause and finding that the arbitration must apply Florida law but take place in Idaho.). The upshot of the statute is that under Idaho law a forum selection provision calling for arbitration outside of Idaho, like a provision calling for judicial resolution outside of Idaho, is unenforceable. And *Gemini Tech*'s holding is controlling as to the validity of the FAS's designation of Ontario, Canada as the site of arbitration.

Since the forum selection provision for arbitration in Ontario is unenforceable, InVita's motion to dismiss the claim stemming from the FAS must be analyzed under the traditional forum non conveniens factors. And that analysis leads to the same conclusion that the Court reached in analyzing the forum selection clause in the Restrictive Agreement: Idaho provides an adequate alternate forum for the contractually required arbitration, and the balance of private and

**MEMORANDUM DECISION AND ORDER - 20**

public interest factors do not favor dismissal. Accordingly, the motion to dismiss

count two on forum non convenience grounds will be denied.  The Court will, of

course, entertain a separate motion to either dismiss or stay that claim in favor of

arbitration to be conducted in Idaho in accordance with Idaho Code § 29-110(1).

**ORDER**

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED** in

part and **DENIED** in part. Count Four is dismissed with leave to amend, and the

motion is denied in all other respects.

DATED: March 3, 2023

B. Lynn Winmill
U.S. District Court Judge